IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEAN L KNIGHT, KATHERINE E MEYER,<br><br>  Plaintiffs,<br><br>  vs.<br><br>NASH-FINCH COMPANY,<br><br>  Defendant. | **8:12CV404**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the parties' respective motions for partial summary judgment.

Plaintiff Meyer requests a judgment, as a matter of law, on her claims identified in the third and fourth causes of action within her complaint. The third cause of action contains six counts, each of which requires a finding that Meyer was employed by the defendant from July 26, 2010 through November 20, 2010. The fourth cause of action alleges Defendant intentionally interfered with Meyer's employment contract with Ryan Distributing. For the reasons discussed below, Meyer's motion, ([Filing No. 52](Filing No. 52)), will be denied.

Defendant Nash-Finch requests a summary judgment on Plaintiff Meyer's claim for recovery under the Nebraska Equal Pay Act, [Neb. Rev. Stat. § 48-1221](Neb. Rev. Stat. § 48-1221), and Plaintiff Knight's claims for intentional infliction of emotional distress and for wrongful termination based on reporting or advocating Meyer's claim under the Nebraska Equal Pay Act. For the reasons discussed below, Defendant's motion, ([Filing No. 56](Filing No. 56)), will be granted.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. See Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.' " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted).

## II. STATEMENT OF FACTS

Plaintiffs Dean L. Knight and Katherine E. Meyer are husband and wife, and at the time of the events described in the Complaint, lived in Omaha, Nebraska. Knight was employed at Avanza Supermarket – a store owned and operated by Defendant Nash-Finch Co. – as an assistant manager until he was fired on December 3, 2010.

From April 1, 2010 until April 23, 2010, Meyer was employed by Nash-Finch to work in the Avanza store. (Filing No. 54, ¶6 at CM/ECF p. 3). Larry Gallegos was the store manager at that time and became aware, through a conversation with Knight, that Meyer had experience working in grocery stores. (Filing No. 59-3 at CM/ECF p. 3-4). Gallegos hired Meyer to assist with a temporary pricing project at Avanza. Meyer provided her driver's license, completed Internal Revenue Service Forms I-9 and W-4, and provided her Social Security card. She was not required to, and apparently did not, file an application at that time. (Filing No. 59-3 at CM/ECF p. 6). Meyer completed the pricing project and was paid for her work.

On July 1, 2010, Meyer began working as an independent contractor for Ryan Distributing, a Nash-Finch vendor. As a Ryan Distributing employee, she created set ups and displays of Ryan's candy products within the Avanza store. (Filing No. 59-3 at CM/ECF p. 13; Filing No. 59-10 at CM/ECF p. 1).

Sometime after June 1, 2010, Pamela Dankof, the Avanza employee who managed the store's home and beauty and general merchandise departments, went on vacation.[1] (Filing No. 59-2 at CM/ECF p. 19). The parties have submitted conflicting evidence on whether Meyer was hired at that time. Meyer claims Frank Chacon, Avanza's store manager in July of 2010, hired Meyer to work part time at Avanza for $9.20 an hour, (Filing No. 54, ¶ 8 at CM/ECF p. 3), she worked 188 hours for Avanza, including "ordering and/or placing on shelves or in display with that Avanza Supermarket various health and beauty products, general merchandising products, and domestic candy products, and assisting with inventory and other tasks, from July 26, 2010 through November 20, 2010, and she was never paid for her work. (Filing No. 54, ¶ 7 at CM/ECF p. 3, ¶¶11-13 at CM/ECF p. 4). Dankof states Meyer was hired to perform

---

[1] Dankoff was unable to provide the exact month or date of her vacation other than stating it was began sometime in the summer after June 1, 2010 and most likely in July or August. (Filing No. 55 at CM/ECF pp. 10 and 16).

Dankof's merchandising duties while Dankof was on summer vacation. ([Filing No. 55 at CM/ECF p. 10](#)). Knight states Chacon was complementary of Meyer's work for Avanza and stated Meyer would eventually be paid. ([Filing No. 54, ¶¶14-16 at CM/ECF p. 14](#)).

However, Defendant claims Meyer was not its employee during the July 26, 2010 through November 20, 2010 time frame, citing the testimony of several former employees who stated the only work Meyer performed in the store was for Ryan Distributing. Paul Davalos, the Avanza store manager in training from May 5, 2010 until November 2010, testified that Meyer was not performing work for Avanza; that is, her sole work in the Avanza store was arranging candy at the check-out aisles on behalf of Ryan Distributing, and Davalos states he was never instructed to submit payroll hours to Nash-Finch for Meyer's alleged work at Avanza. ([Filing No. 59-5 at CM/ECF p. 4-9](#)). See also the testimony of Avanza supervisor Jesse Valle, ([Filing No. 59-6](#)); and its customer service representative Catherine Couch, ([Filing No. 59-7 at CM/ECF p. 15](#)).

Meyer claims that when she first confronted Chacon about her unpaid work, ([Filing No. 54, ¶ 13 at CM/ECF p. 4](#)), she was told her pay was delayed because the corporate headquarters was experiencing payroll problems. ([Id.](#)). Meyer states that when she again asked Chacon about being paid on November 28, 2010, Chacon instructed Meyer not to call the corporate headquarters about the matter. ([Filing No. 54, ¶ 14 at CM/ECF p. 4](#)).

The controversy between the plaintiffs and the defendant peaked in December of 2010. According to Meyer, on December 3, 2010, she called Chacon and demanded her wages for the 188 hours she worked for Nash-Finch at the Avanza store. ([Filing No. 54, ¶ 15 at CM/ECF pp. 4-5](#)). After Chacon told Meyer she would not be paid, Meyer called Paul Kurland, Nash-Finch's human resource manager in Omaha, Nebraska, April Puls, the Human Resource coordinator for Nash-Finch in Minnesota, and the office of

Defendant's Chief Executive Officer[2] to report the wages owed. (Filing No. 54, ¶16 at CM/ECF p. 5).

During her conversation with Puls, Meyer claimed Knight was being harassed at work and Meyer was trying to get hired by Nash-Finch, but the company would not hire her because she was married to Knight. (Filing No. 59-8 at CM/ECF p. 18-19). Puls then contacted Chacon, who stated Meyer "worked for Ryan Distributing candy and started working on GMC Nash-Finch candy and now wants to get paid for it," (Filing No. 55 at CM/ECF p. 27). Chacon reported that Meyer referred to her work for the defendant as "a favor" since "no one [was] taking care of" the GMC Nash-Finch candy. (Filing No. 55 at CM/ECF p. 26).

Knight claims that after Chacon spoke with Meyer on December 3, 2010, Knight was summoned to the store office by Chacon who stated Meyer would have to sue if she wanted to be paid. (Filing No. 54, ¶18 at CM/ECF pp. 14-15). Knight claims that after Chacon spoke to Puls on December 3, 2010, Chacon told Knight about the call, and said Meyer and Knight were not permitted to contact the Nash-Finch human resources department on Meyer's behalf. (Filing No. 54, ¶19 at CM/ECF p. 15). And later that day, Chacon re-assigned Knight from the morning shift to the night shift. (Filing No. 54, ¶ 20 at CM/ECF p. 15).

On December 6, 2010, Kurland issued a "ban and bar" document which prohibited both Meyer and Knight from entering the Avanza Supermarket. The document was signed by the safety officer at Avanza, Bill Hronek, and a department manager, Jesse Valle. Knight claims he was suspended from work "until we figure out Katherine's situation." (Filing No. 54, ¶21 at CM/ECF p. 15).

---

[2] Meyer spoke to the Chief Executive Officer's executive assistant – Debra Ibis.

Robert Weber, the Director of Alternate Formats for Nash-Finch, told the owner of Ryan Distributing that Meyer had been causing a disturbance in the Avanza store, was claiming that she was working for Nash-Finch and was owed wages, had previously created a disruption in the store as a vendor, and was no longer permitted to enter and service the Avanza store. [Filing No. 54 at CM/ECF p. 20](). Ryan Distributing withdrew Meyer's responsibilities at the Avanza store.

Knight's employment was terminated on December 8, 2010. ([Filing No. 54, ¶24 at CM/ECF p. 15]()). Thereafter, he suffered weight loss, embarrassment, depression, sleeplessness, emotional upset, and low self-esteem due to his termination and the "ban and bar" order. ([Filing No. 58-1 at CM/ECF pp. 16, 18-19, 23, 25-37]()). Knight states that due to financial hardship, his nephews, for whom Knight had been caring, had to move out and return to their mother. ([Filing No. 58-1 at CM/ECF p. 34]()). Knight did not seek any medical treatment for his symptoms of emotional distress, claiming he lacked the money to do so. ([Filing No. 58-1 at CM/ECF p. 30]()). For the most part, those symptoms resolved without treatment within nine to ten months after he was fired. He is currently employed. ([Filing No. 58-1 at CM/ECF p. 36]()).

### III. LEGAL ANALYSIS

#### A. Meyer's motion for partial summary judgment.

Plaintiff Meyer seeks partial summary judgment on the claims labelled in the complaint as her third and fourth causes of action. The third cause of action contains six counts; the fourth cause of action alleges Nash-Finch intentionally interfered with Meyer's employment contract with Ryan Distributing.

1. Meyer's Third Cause of Action.

Plaintiff Meyer's third cause of action alleges claims for breach of contract and for recovery under the Nebraska Wage Payment and Collection Act; the federal Fair Labor Standards Act, and Neb. Rev. Stat. § 48-1221.

Meyer's contract theories are viable only if Meyer performed services for Defendant pursuant to an express or implied agreement and Defendant accepted those services. If Nash-Finch never agreed to pay Meyer for any work she performed in the Avanza store, Meyer cannot recover for breach of an express or implied contract. Similarly, liability under Neb. Rev. Stat. §§ 48-1221 and 48-1223 attaches only if an employer-employee relationships exists. See Neb. Rev. Stat. § 48-1220. For the purposes of those statutes "employ . . . include[s] to suffer or permit to work." Neb. Rev. Stat. § 48-1220(4). And the Nebraska Wage Payment and Collection act applies to Meyer's claims only if she was an "employee," defined under the Act as follows:

> Employee means any individual permitted to work by an employer pursuant to an employment relationship or who has contracted to sell the goods or services of an employer and to be compensated by commission. Services performed by an individual for an employer shall be deemed to be employment, unless it is shown that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact, (b) such service is either outside the usual course of business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business.

Neb. Rev. Stat. § 48-1229.

So as to all claims raised in the Meyer's third cause of action, the threshold issue is whether Meyer was an employed by Avanza from July 23, 2010 until December 3,

7

2010. Meyer claims the undisputed evidence establishes that she was employed by NashFinch, and she asserts Defendant has "enhanced the record to create issues of material fact where none exist." (Filing No. 62 at CM/ECF p. 1). The court disagrees.

While Meyer states she was expressly hired by Chacon to perform the Nash-Finch work in the Avanza store, and she offers her own affidavit, Knight's affidavit, and the testimony of Dankloff in support of this statement, Defendant has submitted testimony of current and former employees who worked at that store who refute, or at least call into question, Meyer's claims. When ruling upon Meyer's motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Conolly v. Clark, 457 F.3d 872, 876 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

As such, Meyer's motion for summary judgment on her third cause of action based on claims of express and implied contract, and her claims under Nebraska and Federal wage and employment law must be denied.

2. <u>Meyer's Fourth Cause of Action: Intentional Interference With A Business Relationship.</u>

Meyer moves for summary judgment on her claim that Defendant tortuously interfered with her business relationship with Ryan Distributing. Under Nebraska law, "[t]o succeed on a claim for tortious interference with a business relationship or expectancy a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or

expectancy was disrupted. Reico v. Evers, 278 Neb. 405, 417-18, 771 N.W.2d 121, 131 (2009).

The primary question presented is whether Nash-Finch engaged in an unjustified intentional act of interference. Reico applied the seven-factor balancing test found in the Restatement (Second) of Torts § 767 to determine whether an act was unjustified. Reico, 278 Neb. at 419, 771 N.W.2d at 132. Those factors include, but are not limited to:

> (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

Id.

Meyer asserts Nash-Finch tortuously interfered with her employment for Ryan distributing by contacting its owner and requesting that Meyer no longer perform work for Ryan Distributing within the Avanza store. But Kurland states Meyer's previous interactions with Avanza workers played a part in barring her from the store. (Filing No. 59-4 at CM/ECF pp. 9-11). Resolving this issue will require "a fact-intensive, comparative appraisal" which is not appropriately resolved by summary judgment. Trimble v. BNSF Ry. Co., 636 F. Supp. 2d 916, 925 (D. Neb. 2009). Meyer's motion for summary judgment on her fourth cause of action will be denied.

### B. Defendant's Motion For Partial Summary Judgment.

Nash-Finch moves for summary judgment on Meyer's claim under the Nebraska Equal Pay Act, and Knight's claims of intentional infliction of emotional distress and wrongful termination. For these motions, the facts must be construed in a light most favorable to Knight and Meyer, the non-moving parties.

1. Meyer's Nebraska Equal Pay Act claim.

Meyer alleges a claim under the Nebraska Equal Pay Act. Neb. Rev. Stat. § 48-1221, asserting she was not paid for her alleged work with Nash-Finch because she is a woman. Nash-Finch asserts that even assuming Meyer was an employee of Nash-Finch during the relevant time period, it is entitled to summary judgment on this claim.

Courts analyze NEPA claims under the same standards as federal Equal Pay Act claims. See Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1027 (8th Cir. 2002). "In order to establish a prima-facie case under the EPA, an employee must prove an employer paid different wages to men and women performing equal work." Drum v. Leeson Elec. Corp., 565 F.3d 1071, 1072 (8th Cir. 2009)(quoting Brown v. Fred's, Inc., 494 F.3d 736, 740 (8th Cir.2007)). To be equal, the work must have required "equal skill, effort, and responsibility that were performed under similar working conditions." Grover v. Smarte Carte, Inc., 836 F. Supp. 2d 860, 865 (D. Minn. 2011)(citing Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003)).

Meyer is not claiming she was paid a lower wage than a male counterpart, but that she was paid no wage at all.[3] Meyer argues Avanza employee Jesse Valle was initially not paid for working on his days off, but after he complained to Chacon, the mistake was corrected and Valle was paid the wages owed. Meyer claims she similarly complained, and was not paid for wages owed. Assuming the EPA applies to such a claim, Meyer has failed to show that she and Valle performed "equal work." Rather, the record reveals

---

[3] As an initial matter, it is not clear whether the Equal Pay Act applies to claims alleging a failure to pay any wages. But for the purposes of Meyer's pending motion, the court will assume it does.

Valle was a supervisory employee at Avanza; Meyer was not. Meyer has failed to present evidence to support her claim for gender discrimination under the Equal Pay Act.[4]

### 2. Knight's Claim For Wrongful Termination.

Knight asserts he was wrongfully terminated as an employee of Nash-Finch in violation of Nebraska public policy. Nebraska is an "at-will" employment state, meaning "[u]nless constitutionally, statutorily, or contractually prohibited, an employer, without incurring any liability, may terminate an at-will employee at any time with or without reason." Trosper v. Bag 'N Save, 273 Neb. 855, 857, 734 N.W.2d 704, 706-07 (2007). Nebraska courts have carved out an exception to the at-will doctrine in cases where the termination of an employee violates a "clear mandate of public policy." Trosper, 273 Neb. at 857-58, 734 N.W.2d at 707.

In this case, Knight brings a claim of wrongful termination based on several grounds, including that Defendant fired him because he complained that Defendant was violating Neb. Rev. Stat. § 48-1219 et seq. As discussed above, these statutes prohibit an employer from paying unequal wages to men and women for equal work performed. Knight has submitted no evidence he complained to Chacon or any other Nash-Finch employee that Meyer was not being paid because she is a woman. Absent such evidence,

---

[4] In addition, even assuming that the Equal Pay Act applies to Meyer's claim, the evidence of record does not support the assertion that Meyer did not receive pay because of her gender. There is no evidence that any other woman who worked for Avanza—in any capacity—was not paid for work. To the contrary, Dankof, who performed work nearly identical to the tasks Meyer allegedly performed, was paid wages for her work. (Filing No. 58-5 at CM/ECF p. 4).

11

Knight cannot base his wrongful termination claim on a public policy violation of the Nebraska Equal Pay Act.[5]

### 3. Knight's Claim of Intentional Infliction of Emotional Distress.

Knight claims the treatment he received from Nash-Finch, and his ultimate termination, supports a Nebraska common law claim for intentional infliction of emotional distress. To recover of this claim, Knight must prove: (1) Nash-Finch engaged in intentional or reckless conduct; (2) the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) the conduct caused "emotional distress so severe that no reasonable person should be expected to endure it." Iwanski v. Gomes, 259 Neb. 632, 636-637 (2000).

### a. Outrageous conduct.

Nebraska courts have addressed the types of conduct deemed so outrageous as to warrant a finding of intentional infliction of emotional distress. In Roth v. Wiese, 271 Neb. 750, 762-63, 716 N.W.2d 419, 432 (2006), the court found outrageous conduct where the perpetrator of a sexual assault contacted the victim and berated and threatened her in an attempt to secure her silence. In Brandon v. County of Richardson, 261 Neb. 636, 624 N.W.2d 604 (2001), the court found as a matter of law that a law enforcement officer's treatment of a rape and beating victim was outrageous. The law enforcement officer made several vulgar comments indicating he believed the rape victim willingly participated in the sexual encounter, falsely accused her of providing inconsistent accounts, and asked her several questions that were inappropriate and wholly irrelevant to

---

[5] To be clear, Knight's other theories of his wrongful termination claim, i.e. – the Nebraska Wage and Hour Act and the Fair Labor Standards Act – remain. This ruling is limited only to his claim based on the Nebraska Equal Pay Act.

a rape investigation. Brandon, 261 Neb. at 658-59, 624 N.W.2d at 622. And in Dale v. Thomas Funeral Home, 237 Neb. 528, 466 N.W.2d 805, the Nebraska Court held a funeral home director's refusal to release the body of a woman's husband for failure to pay a $490 bill—tantamount to "holding the corpse hostage for a ransom"—was outrageous conduct. Heitzman v. Thompson, 270 Neb. 600, 606, 705 N.W.2d 426, 431 (2005).

In contrast, an ex-husband's pattern of stalking, frightening, and disparaging his former wife was "childish, irresponsible, and inconsiderate," but "it is doubtful whether his conduct" was sufficiently outrageous to support a claim for intentional infliction of emotional distress. Hassing, 214 Neb. at 158, 333 N.W.2d at 767. Davis v. Texaco, Inc. 210 Neb. 67, 313 N.W.2d 221 (1981), held a plaintiff, who was forced to remove her shirt due to burns from splashing radiator fluid, was not the victim of outrageous conduct where the defendant initially ignored her requests for something to cover herself, disabled her car until she returned the fender cover they later provided, and only then provided an old shirt and allowed her to leave. Davis, 210 Neb. at 71, 313 N.W.2d at 223. And Foreman v. AS Mid-America, Inc., 255 Neb. 323, 586 N.W.2d 290 (1998), held that the harassment and intimidation by union members against a non-union employee was not sufficiently outrageous where the discrimination and intimidation included:

> various forms of verbal, physical, and psychological harassment inside the plant during working hours and also outside the plant after working hours, . . . . nonunion members' being followed home after work by union members, name calling, physical threats, union members' placing threatening telephone calls to the homes of nonunion members, various forms of property damage, and in one extreme situation, a nonunion employee's having dog feces spread on the clothes in his locker.

Foreman, 255 Neb. at 329-30; 586 N.W.2d at 297.

Knight claims Defendant intentionally harmed Knight personally, professionally and financially by issuing a "ban and bar" against him, which was typically used only with individuals caught stealing or threatening violence. Knight claims he was thereby subjected to an unfair and untrue stigma with other Avanza employees and within the community. He claims Nash-Finch, his long-time employer, banished him from the Avanza premises and fired him because he supported his wife. This conduct, if true, was undoubtedly unpleasant, but it does not meet the "high hurdle" of being so extreme that no reasonable person should be expected to endure it. Heitzman v. Thompson, 270 Neb. 600, 605, 705 N.W.2d 426, 431 (2005). Knight has submitted insufficient evidence to support a claim for intentional infliction of emotional distress.

Even assuming Defendant's conduct was outrageous, to recover for intentional infliction of emotional distress, the "emotional anguish or mental harm must be medically diagnosable and must be of sufficient severity that it is medically significant.' " Hamilton v. Nestor, 265 Neb. 757, 767, 659 N.W.2d 321, 329 (2003)(quoting Schleich v. Archbishop Bergan Mercy Hosp., 241 Neb. 765, 770-71, 491 N.W.2d 307, 310-11 (1992)). Headaches, nightmares, loss of sleep, and nausea after the still birth of a child is not sufficiently severe to support a claim. Andreasen v. Gomes, 244 Neb. 73, 77, 504 N.W.2d 539, 542 (1993). Nor is a mother's continual crying, an eating disorder and insomnia after being mistakenly informed that her son had died from injuries he sustained in motorcycle accident. Sell v. Mary Lanning Memorial Hosp. Ass'n, 243 Neb. 266, 498 N.W.2d 522 (1993).

Knight claims his inability to assist his wife in her battle with Nash-Finch created a sense of worthlessness and self-loathing, and due to the financial hardship created by their joint job loss, Knight was forced to send his two nephews, whom Knight was caring for at the time, back to live with their mother. He was distressed over losing his medical

benefits, was concerned he would not be able to find work, and had difficulty falling and staying asleep.

> Knight suffered emotional upset and a loss of self-esteem. This included physical symptoms of that distress, such as (1) a loss of appetite; (2) fatigue; (3) decreased energy; ( 4) restlessness; (5) difficulty making decisions; (6) feelings of guilt; (6) feelings of worthlessness; (7) feelings of helplessness; (8) anxiety; (9) feelings of sadness; (10) feelings of emptiness; (11) irritability; (12) insomnia; and (13) headaches. Knight lost fifteen (15) to twenty (20) pounds in approximately two (2) to three (3) weeks after he was terminated from his job and banned and barred.

[Filing No. 60 at CM/ECF p. 18](#).

Knight did not seek medical treatment for the manifestations of his emotional distress; strong evidence that Defendant's actions did not affect Knight in an usually severe manner. See, e.g., [Parrish v. Omaha Pub. Power Dist., 242 Neb. 731, 496 N.W.2d 914, 915-16 (1993)](#) (finding plaintiff's lack of psychological or physical treatment indicated her father's death did not have an "extraordinary effect" on her"). His alleged symptoms are to be expected when an individual loses a job and encounters financial difficulty. Knight rebounded relatively quickly and at the time of the deposition, complained of no lasting effects. While there is little doubt Knight experienced hardship and trauma due to the loss of his long held job and Meyer's ongoing dispute with Chacon and Nash-Finch, Knight did not present evidence that his emotional distress was so severe that no reasonable person could be expected to endure it.

Accordingly, and for all the foregoing reasons,

IT IS ORDERED:

1)  Plaintiff Meyer's motion for partial summary judgment, ([Filing No. 52](#)), is denied.

15

2) Defendant's motion for partial summary judgment, ([Filing No. 56](#)), is granted as set forth herein.

Dated this 16th day of January, 2014

                                        BY THE COURT:

                                        *s/ Cheryl R. Zwart*
                                        United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.